#### IN THE UNITED STATES DISTRICT COURT

#### FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. CR 08-1098 RB |
| | ) |
| SHELDON ANTHONY REYNOLDS, | ) |
| | ) |
| Defendant. | ) |

#### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's (Mr. Reynolds') Emergency Motion for Access to Court Records (Doc. 124), filed on June 26, 2009.  Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I find that this motion should be denied.

**I.     Background.**

On August 18-21, 2008, Mr. Reynolds, along with Co-Defendant, Ronald Kirk Whitaker ("Mr. Whitaker"), were tried before a jury and found guilty of: (1) conspiracy to possess with intent to distribute 100 kilograms and more of marijuana in violation of 21 U.S.C. §846; and (2) possession with intent to distribute 100 kilograms and more of marijuana in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B) and aiding and abetting in violation of 18 U.S.C. § 2.

A few months after the verdict, DEA Task Force Officer David Metz of Des Moines, Iowa contacted DEA Special Agent Joseph Montoya of the Las Cruces, New Mexico DEA Office.  For the first time, Special Agent Montoya learned that there was an ongoing investigation pertaining to a Jamaican drug ring that potentially involved Mr. Reynolds and Dwight Brown, a witness for the Government and the owner of the tractor-trailer driven by Mr. Whitaker.  Special Agent Montoya was not provided with DEA reports concerning the ongoing Iowa investigation (herein "Reports")

at that time.

Task Force Officer David Metz contacted Mr. Whitaker's trial counsel, Dennis Candelaria. Officer Metz explained that the DEA had investigated Mr. Brown and Mr. Reynolds for almost a year and that the DEA believed that Mr. Brown and Mr. Reynolds were involved in a conspiracy responsible for moving thousands of pounds of marijuana, worth millions of dollars, around the country. Officer Metz asked Mr. Candelaria if Officer Metz could speak with Mr. Whitaker to discuss Mr. Reynolds and Mr. Brown. In response, Mr. Candelaria told Officer Metz that Mr. Whitaker could not provide any additional information other than the testimony he presented to the jury at the trial.

On March 3, 2009, Mr. Whitaker filed a Motion for New Trial, alleging that the prosecution withheld material, exculpatory impeachment information regarding the extent of the previous criminal involvement of Mr. Reynolds and Mr. Brown, who both testified at trial. Neither the Motion for a New Trial, nor the United States' Response thereto, is sealed.

On April 1, 2009, Ms. Armijo submitted the documents herein entitled Reports to the Court for in camera review. The Reports have neither been filed in the court record, nor disseminated by the Court.

On May 13, 2009, after reviewing the Reports in camera, and without holding a hearing, the Court granted Mr. Whitaker's Motion for a New Trial in a Sealed Memorandum Opinion and Order. The Court sua sponte sealed the Memorandum Opinion and Order and ordered counsel for Mr. Whitaker to keep the information contained in the Sealed Memorandum Opinion and Order confidential, except as necessary to represent Mr. Whittaker.

In the instant motion, Mr. Reynolds requests that the Court (1) unseal the Sealed Memorandum Opinion and Order and (2) order the United States to disclose every report pertaining

to Mr. Reynolds or Mr. Brown.  As grounds, Mr. Reynolds relies on his Sixth Amendment right to a fair trial, to present a defense, and to confront and cross-examine witnesses, his Fifth Amendment right to due process of law, and his First Amendment right of access to court records.

The United States responds that the Iowa DEA Investigation is ongoing and the release of detailed information would hamper the investigation.  The United States observes that the Sealed Memorandum Opinion and Order contains specific information on Defendant Reynolds related to the ongoing investigation that is not discoverable.  The United States intends to provide redacted reports pertaining to "Dwight" to Mr. Reynolds.  According to the United States, there is no evidence that the instant case is directly related to the Iowa DEA investigation.

In his Reply to the United States' Response to Emergency Motion for Access to Court Records, Mr. Reynolds points out that, in a February, 24, 2009 email, Ms. Armijo stated that the United States believed the Iowa DEA investigation was "related" to the instant case.  (*See* Def. Ex. A, Doc. 128-2.)  Mr. Reynolds additionally asserts, in his reply brief, that the Reports and the Sealed Memorandum Opinion and Order are material, exculpatory, and would have raised a reasonable probability of a different result sufficient to undermine confidence in the jury's verdict.

**II.    Discussion.**

"Courts have long recognized a common-law right of access to judicial records."  *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (*citing Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  "The right is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes."  *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985).  However, the common-law right of access is not absolute; it can be rebutted when other interests outweigh the public interests in access.  *Mann*, 477 F.3d at 1149.

With regard to the First Amendment argument, the Supreme Court has not yet ruled that

there is a constitutional right to access court documents. *See United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998); *United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir. 1997). The Tenth Circuit has rejected the argument that such an absolute right exists. *See, e.g. Gonzales*, 150 F.3d at 1256 (rejecting press' request for access to CJA payment vouchers); *McVeigh*, 119 F.3d at 813-14 (rejecting press' request for access to suppressed evidence); *United States v. Hickey*, 767 F.2d 705, 709 (10th Cir. 1985) (rejecting defendant's request for sealed plea bargain and court file of his co-conspirator). Clearly, however, if such a right does exist, it may be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Gonzales*, 150 F.3d at 1256.

Regardless of the origin of the right of access, it is clear that "[a]ll courts have supervisory powers over their own records and files. Thus, a court, in its discretion, may seal documents if the public's right of access is outweighed by competing interests." *Hickey*, 767 F.2d at 708 (citations and quotation marks omitted). The decision of whether to seal judicial records is within the district court's discretion and the Tenth Circuit reviews such a decision for abuse of discretion. *Mann*, 477 F.3d at 1149. In exercising its discretion, a district court should consider the facts and circumstances of the individual case and weigh the parties' competing interests. *See Hickey*, 767 F.2d at 708.

The Court sua sponte sealed the Sealed Memorandum Opinion and Order and imposed the confidentiality requirement on Mr. Whitaker's counsel because the Court was concerned that dissemination of the information contained in the Reports, and discussed in the Sealed Memorandum Opinion and Order, might compromise the ongoing Iowa DEA investigation. Contributing to the calculus was the need to protect the safety of the individuals identified in the Reports and the law enforcement agents involved in the ongoing Iowa DEA investigation.

Courts have recognized that law enforcement agents involved in an ongoing investigation

4

may require additional cooperation from their sources of information. "Officials with law enforcement responsibilities may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality. If that confidentiality cannot be assured, cooperation will not be forthcoming." *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). If the Reports are released in their entirety, persons involved in the suspected drug conspiracy may ascertain the identity of confidential informants. Mr. Reynolds' "generalized claim that the file might contain helpful matter does not outweigh the government's justifiable concern with safety." *Hickey*, 767 F.2d at 709. Simply put, the sensitive nature of the information warrants the prohibitions on disclosure. Having balanced the interests involved, the Court stands by its decision to seal the Sealed Memorandum Opinion and Order and to limit the use of the information by Mr. Whitaker's counsel.

Mr. Reynolds asks the Court to order the United States to disclose every report pertaining to Mr. Reynolds or Mr. Brown. As noted above, complete disclosure of the Reports could undermine the ongoing Iowa DEA investigation and threaten the safety of individuals involved in the investigation. The Court has reviewed the Reports and determined that they are not exculpatory as to Mr. Reynolds. At the same time, Ms. Armijo's suggestion contained in her February 24, 2009 email that the instant case may be related to the Iowa DEA investigation is bourne out by the contents of the Reports and the mention therein of the Lordsburg arrest of Mr. Reynolds in May 2008. However, the fact that this case may be related to the Iowa DEA investigation does not mean that the Reports should be disclosed.

The Reports indicate that Mr. Reynolds was involved for many years in a conspiracy to regularly transport large quantities of marijuana across the country by semi-truck along with legitimate shipments of cargo. Members of the conspiracy rented and stayed at a house in Phoenix,

Case 2:08-cr-01098-RB   Document 132   Filed 07/21/09   Page 6 of 6

Arizona. Notably, the Reports identify a truck driver involved in the conspiracy as Dwight LNU, a/k/a Lanky, and describe "Dwight" as a Jamaican male, in his 30's with glasses. This description matches the Dwight Brown who testified at trial for the United States.

The United States correctly concluded that it must disclose to Mr. Reynolds redacted portions of the Reports pertaining to "Dwight," a government witness. While the United States' assertion that there is no evidence that the instant case is directly related to the Iowa DEA investigation is tenuous, the United States is correct that the Reports are not exculpatory with respect to Mr. Reynolds. To be clear, based on the extensive information in the Reports detailing Mr. Reynolds long-term involvement in a conspiracy to transport marijuana across the country by semi-truck with legitimate cargo, the Reports are not exculpatory as to Mr. Reynolds. By contrast, the Reports contain no direct information concerning Mr. Whittaker. With respect to Mr. Whitaker, the Reports are exculpatory in that they directly inculpate Mr. Reynolds.

The Court trusts that the United States intends to disclose to Mr. Reynolds, in a timely manner, all information as required by *Brady, Giglio,* Jencks, and Rule 16. Nonetheless, the United States is ordered to supplement its disclosures and comply with all discovery obligations with respect to Mr. Reynolds by July 31, 2009.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Reynolds' Emergency Motion for Access to Court Records (Doc. 124), filed on June 26, 2009, is **DENIED**.

**IT IS FURTHER ORDERED** that the United States must supplement its disclosures and comply with all discovery obligations with respect to Mr. Reynolds by July 31 , 2009.

                                                                                             **ROBERT C. BRACK**
                                                                                             **UNITED STATES DISTRICT JUDGE**